THE MOUNT VERNON TRUST COMPANY, Appellant, *v.*
CLARA BERGOFF, Respondent.

(Argued October 7, 1936; decided November 24, 1936.)

*Clinton T. Taylor* and *James D. Hopkins* for appellant.

*Arthur C. Blatz* and *Samuel Rochlin* for respondent.

LEHMAN, J. In October, 1932, Rose Bergoff, the mother of the defendant, owed the plaintiff bank the sum of $34,644.23 upon a promissory note which was fully secured by collateral deposited with the bank. At that time the defendant owned a bond and mortgage executed by Oakwood Gardens, Inc., on which the sum of $30,000 was due, with accrued interest amounting to $1,505. The mortgage was guaranteed by an additional bond executed by Milton Hall, an executive vice-president of the plaintiff bank, and two other persons. The defendant's father, acting on her behalf and also on behalf of his wife, Rose Bergoff, had many conversations with the president of the plaintiff bank and with Hall in regard to the payment of the defendant's bond and mortgage. The testimony in regard to what was said then about Hall's guaranty is vague, but perhaps, as the respondent claims, it is sufficient to show that Hall said that in sign-

ing the guaranty he had been acting for the bank and that, upon the demand of the defendant's father, the bank thereupon agreed to accept assignments of the bond and mortgage, together with the separate bond guaranteeing payment thereof, and credit the amount of $31,505 then due as part payment of the note of the defendant's mother, Rose Bergoff. Accordingly these instruments were assigned to the plaintiff bank, and Rose Bergoff then executed a new note for $3,139.23, the difference between the amount due on her original note, and the sum of $31,505 credited thereon, and the original note and the original collateral securing it were then returned by the bank.

Then the defendant at the request of the bank executed and delivered the instrument upon which this action is based. At the same time she received back from the bank a letter in which the bank through its president wrote: " It is understood that the collateral note of $30,000 * * * this day executed by you and purchased by The Mount Vernon Trust Company is to be held by the Mount Vernon Trust Company only as additional evidence of the debt of Oakwood Gardens Inc. to The Mount Vernon Trust Company and collection of said note is not to be enforced as against you, anything contained in said note to the contrary notwithstanding, and further that the collection of said note will have to be made by the undersigned out of the collateral this day assigned as security therefor." At the close of the evidence both sides moved for the direction of a verdict and the trial judge directed a verdict in favor of the defendant. The Appellate Division affirmed the judgment, holding that the defendant's note was made without consideration and upon a condition precedent which prevented it from taking effect. It relied for authority largely upon the case of *Higgins* v. *Ridgway* (153 N. Y. 130, 132).

It may be conceded that what was said and, perhaps, even what was decided in that case tends to support the

decision of the courts below. There a clerk employed by a firm of which a director of a bank was the senior member, executed a note for $15,000 to the order of the bank upon the promise or representation made to him by the president of the bank that "you will get nothing for it, and I tell you that you will not be held on the note." The court upon these facts sustained the defense of the maker of the note. In that case the bank had parted with nothing in consideration of the defendant's execution of the note and the court, without considering whether any question of public policy was involved or whether a transaction with a bank is governed by the same considerations as a similar transaction between private persons, refused to enforce an instrument which was never intended to create an obligation.

Since that time it has become evident that the rule applied in the *Ridgway* case might become a cloak for fraud. So we pointed out in *Bay Parkway Nat. Bank* v. *Shalom* (270 N. Y. 172, 176) that an agreement to exempt the maker or indorser of a note from liability is not always enforceable. "When one knows that his note is to be treated as an asset of a bank and, as a result, bank examiners are deceived and depositors continue their relations with the bank on the faith of an assumed solvency, then he is estopped from pleading the defense of no consideration." In this case no witness, produced at the trial, testified as to the reason why a note was received, and at the same time a writing given, exempting the maker from liability. No explanation is necessary, for but one inference can be drawn from the testimony. The bank desired to conceal the substitution of a bond and mortgage, guaranteed by one of its officers, for a negotiable instrument which concededly was secured by ample collateral and could have been collected at that time. The defendant in making the note may have been ignorant of what the bank was trying to conceal. We are not told in this case whether the bank examiner was

deceived, and indeed we do not know whether any one was deceived. A fictitious note delivered to a bank, intended to become part of its apparent assets, though not intended to be enforceable, is in itself a continuing falsehood calculated to deceive the public, and any person delivering such a note becomes a party to the falsehood.

In such case it is immaterial whether the note was based on good consideration or not. The stability of banks is a matter of such public concern that the State or Federal government regulates the affairs of each bank and periodically examines its apparent condition. The State cannot sanction any device intended to give a false appearance to a transaction or increase the apparent stability of a bank. The defendant may not have intended to deceive any person, but when she executed and delivered to the plaintiff bank an instrument in the form of a note, she was chargeable with knowledge that, for the accommodation of the bank, she was aiding the bank to conceal the actual transaction. Public policy requires that a person who, for the accommodation of the bank executes an instrument which is in form a binding obligation, should be estopped from thereafter asserting that simultaneously the parties agreed that the instrument should not be enforced. (Cf. *Iglehart* v. *Todd*, 203 Ind. 427; *Denny* v. *Fishter*, 238 Ky. 127; *Bangor Trust Co.* v. *Christine*, 297 Penn. St. 64; *Cedar State Bank* v. *Olson*, 116 Kan. 320; *Mars Nat. Bank* v. *Hughes*, 256 Penn. St. 75.)

The judgments should be reversed and judgment directed for the plaintiff, with costs in all courts.

CRANE, Ch. J., O'BRIEN, HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Judgments reversed, etc.